■ MICHAEL MULLANY et al., Appellants, v MUNCHKIN ENTER-PRISES, LTD., et al., Respondents. [893 NYS2d 714]—

McCarthy, J.

In 1998, defendant Munchkin Enterprises, Ltd. entered into a contract with plaintiffs to purchase a three-acre parcel and a utility easement to the Normanskill Creek located on plaintiffs' 60-acre property in the Town of New Scotland, Albany County. Munchkin desired to locate an off-site sewage treatment plant on the parcel to service a proposed residential development referred to as the Tall Timbers project. As relevant to this appeal, the 1998 contract was contingent upon Munchkin obtaining all necessary government approvals for the project. Plaintiffs received a down payment and were entitled to receive the balance of the purchase price upon transfer of title. Additional consideration included Munchkin's promise to provide certain

infrastructure to several lots outside the project. The closing was to be scheduled after the filing of an approved subdivision map for the project, "but no later than December 31, 2000." The contract provided that "[l]icense and permit securement [for the project] is a condition precedent to the obligation of [Munchkin] to close."

Munchkin was unable to secure approvals for the project and, in June 2000, defendant Purdy's Tall Timbers, LLC (hereinafter Purdy) bought Munchkin. In August 2001, Purdy obtained an "extension" on the 1998 contract, which had expired, to December 31, 2002. Purdy was also unsuccessful in obtaining approvals and, in January 2004, contracted with defendant Masullo Brothers Builders, Inc. to sell Purdy's interest in the project to Masullo in the event Masullo was successful in obtaining the necessary government approvals.

In November 2003, Masullo offered plaintiffs an increase on the purchase price for the 1998 contract (which had expired), to extend the right to purchase plaintiffs' property for three years. Plaintiffs refused to grant a three-year extension, but responded with an offer to extend the contract for two years, to December 31, 2005. Masullo did not respond to plaintiffs' counteroffer. In August 2006, plaintiffs contacted Masullo to inquire as to the status of the project and request a closing as soon as possible. Masullo replied that, due to engineering changes in the project, it no longer needed to acquire plaintiffs' property. According to the complaint, plaintiffs then demanded a "time-of-the-essence" closing as of January 5, 2007, to which defendants did not respond.

Plaintiffs commenced this action alleging that defendants breached the 1998 contract and its purported extensions by failing to close on the transaction, pay the consideration and make the required infrastructure improvements. Plaintiffs alleged that the government approval contingency was not triggered because defendants did not submit proper applications to municipal authorities that were denied. Plaintiffs claimed that Purdy was an assignee of Munchkin and that Masullo was an assignee of Purdy or equitably estopped from denying that it was an assignee. Defendants moved for summary judgment dismissing the complaint and plaintiffs cross-moved for summary judgment on liability against Munchkin and Purdy. Supreme Court granted defendants' motions and denied plaintiffs' cross motion, prompting these appeals by plaintiffs.

Supreme Court first found that plaintiffs did not have an enforceable contract with Masullo under the statute of frauds, and that Masullo had not engaged in any effort to deceive plaintiffs

that would warrant the application of equitable estoppel. Accordingly, Supreme Court dismissed plaintiffs' claims against Masullo. We agree that Masullo demonstrated entitlement to judgment as a matter of law on plaintiffs' breach of contract claim because no valid contract existed between Masullo and plaintiffs at the time of the alleged breach (*see Wilderhomes, LLC v Zautner*, 34 AD3d 1062, 1064 [2006]). No written memorandum sufficient to satisfy the statute of frauds memorialized any agreement between plaintiffs and Masullo for the purchase of real property (*see* General Obligations Law § 5-703 [2]; *Regan v Real Source Charities, Inc.*, 45 AD3d 1156, 1157 [2007]). The only writings signed by or on behalf of Masullo that mention the potential purchase of plaintiffs' land are Masullo's contract with Purdy and a letter between Masullo's and Purdy's respective attorneys. Both documents specifically refer to an option rather than a purchase contract, and the letter only acknowledges an "agreement in principle" to extend the option, to be formalized at a future date. These documents fail to " 'unequivocally establish all the essential elements of a contractual relationship . . . such as price, terms, parties and a description of the subject matter' " (*Syman v Vanderheuval*, 249 AD2d 870, 872 [1998], quoting *Bordeau v Oakley*, 185 AD2d 417, 418 [1992]). It is significant that these documents characterized the 1998 contract as an option rather than a purchase contract, because plaintiffs are claiming that defendants breached a bilateral contract. The contract and letter between Purdy and Masullo cannot, therefore, establish an essential term of the alleged contract between plaintiffs and Masullo. The only other writing signed on Masullo's behalf is the letter from its attorney to plaintiffs' attorney stating that Masullo no longer has a need to acquire plaintiffs' property. This letter does not acknowledge a bilateral contract and, in fact, operates as Masullo's decision not to exercise its option to purchase plaintiffs' property. It, therefore, cannot satisfy the statute of frauds in establishing a bilateral contract. Consequently, plaintiffs failed to raise any triable issue of fact with respect to the existence of an enforceable contract between plaintiffs and Masullo.

Equally unavailing is plaintiffs' argument that Masullo either assumed responsibility for the 1998 contract from Purdy or should be equitably estopped from denying that it did so. Under the contract between Purdy and Masullo, no assignment of Purdy's rights and obligations to Masullo would take effect until after Masullo successfully secured government approvals for the project. Nor did plaintiffs raise any factual issue as to any attempt by Masullo to mislead plaintiffs that would warrant an estoppel. In any event, even if Masullo did assume

Purdy's obligations under the 1998 contract, as discussed below, no duty to close on the sale of plaintiffs' property has been triggered.

After dismissing plaintiffs' claims against Masullo, Supreme Court determined that acquiring the necessary government approvals for the project was a condition precedent to the obligation of Munchkin or Purdy to perform the 1998 contract, and that despite good faith efforts, the condition went unfulfilled. Supreme Court also rejected plaintiffs' argument that defendants' conduct in repeatedly extending the closing deadline after it had passed resulted in an indefinite adjournment of the closing date. Accordingly, Supreme Court dismissed the remainder of the complaint. We agree that plaintiffs' claims are barred by the failure of the condition precedent.

Whether a condition precedent exists under the terms of a contract is a matter of law for the court to decide (*see Rooney v Slomowitz*, 11 AD3d 864, 865 [2004]). " '[A] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition' " (*id.*, quoting *Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d 576, 581 [1992]). Here, the plain language of the contract is unambiguous in stating that Munchkin's duty to secure government approvals for the project "is a condition precedent to the obligation of [Munchkin] to close." Moreover, construing the duty as a condition precedent is consistent with the purpose of the contract, which was a peripheral agreement to the overall Tall Timbers project. Although the complaint alleged that defendants failed to seek approvals, plaintiffs submitted no evidence suggesting a lack of good faith efforts to secure government approvals for the project. In contrast, defendants demonstrated that substantial time, money and effort was invested in an unsuccessful attempt to secure approvals for the project. Inclusion of the condition precedent in the 1998 contract reflected the parties' understanding that there was no guarantee that necessary government approvals would be secured for the project as then proposed. Indeed, after years of unsuccessful efforts to secure approvals for the original plan, changes to the potential scope of the project prompted by suggestions from municipal officials eliminated defendants' need for plaintiffs' property. Even so, as of the time the complaint was filed, the project still had not received necessary government approvals. Accordingly, no duty to close on the sale of plaintiffs' property ever arose and the complaint was properly dismissed.

Cardona, P.J., Spain, Malone Jr. and Stein, JJ., concur. Ordered that the orders are affirmed, with one bill of costs.